IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

GARY MAX CHAMBERS                                                                                       PLAINTIFF

v.                                                Civil No. 6:18-cv-06091

JASON WATSON, Sheriff, Clark County,
Arkansas; DERRICK BARNES, Administrator,
Clark County Detention Facility; ROBERT JONES,
Deputy Sheriff, Clark County; OFFICER CHASE KERSEY;
OFFICER K. LOVE, Clark County Detention Facility;
DEPUTY NICK FUNDERBURK; DEPUTY PERRY;
DEPUTYANDREW SAMUELS;
DEPUTY NATE MORRISON; and
TOMMY WALDRON, Amity Police Department                                                DEFENDANTS

## REPORT AND RECOMMENDATION

Before the Court is Plaintiff's Motion to Withdraw Settlement Agreement. (ECF No. 101). Defendants have filed a Response in opposition to the Motion. (ECF No. 106). Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, Chief United States District Judge, referred the instant motion to the undersigned for the purpose of making a Report and Recommendation.

### I. PROCEDUREAL BACKGROUND

Plaintiff filed his original Complaint on September 27, 2018. (ECF No. 2). Plaintiff's Amended Complaint was filed on October 9, 2019, and set forth three claims against Defendants Sheriff Jason Watson, Derrick Barnes, Chief Deputy Nick Funderburk, Robert Jones, Chase Kersey, Officer Love, Nate Morrison, Deputy Andrew Samuels, Deputy Perry, and Tommy Waldron. (ECF No. 7).

Motions for summary judgment were filed by the Defendants in August of 2019. (ECF No. 43, 47).

On March 4, 2020, Chief United States District Judge Susan O. Hickey entered an Order granting in part and denying in part the motions for summary judgment. (ECF No. 83). Following entry of the summary judgment Order, the following claims remained:

- Plaintiff's individual capacity claims against Robert Jones, Nick Funderburk, Chase Kersey, Officer K. Love, Andrew Samuels, Nate Morrison, and Deputy Perry with respect to the night incident as set forth in claim one of the Amended Complaint; and

- Plaintiff's individual capacity claims against Separate Tommy Waldron as set forth in claim two of the Amended Complaint.

(ECF No. 83).

## II.  THE SETTLEMENT CONFERENCE

On April 8, 2020, the case was referred to the undersigned for a mandatory settlement conference. (ECF No. 84). The settlement conference was held on November 16, 2020 via Zoom. (ECF No. 100). The undersigned actively participated in the settlement conference as "mediator." Although the settlement conference was not conducted in person, Zoom video conferencing allowed the undersigned to meet privately with both the Plaintiff and the Defendants and their counsel. When tentative settlement was reached the Plaintiff and counsel for Defendants met with the undersigned jointly to finalize the agreement. The terms of the agreement were stated clearly by the undersigned to both parties who each in turn agreed with the settlement terms and conditions. The undersigned directed Defendants' counsel to draft the settlement agreement and release to memorialize the parties' agreement and to forward the same to the Plaintiff for review.

In the instant Motion, Plaintiff states that after viewing the settlement papers he would "never sign anything like that." (ECF No. 101). Plaintiff further states "I no longer have any desire to settle out of court, and I ask that you please set this case for trial." (ECF No. 101).

According to Defendants' Response to the Motion, on November 18, 2020, two days after the settlement conference, Defendants' counsel forwarded to Plaintiff documents necessary for the finalization of the settlement offer. The documents included a Settlement Agreement and Release of All Claims and a Medicare form. (ECF No. 106). Defendants' Response states "[t]he format and language used in the Settlement Agreement and Release included standard language including, but not limited to: a release of all claims which Plaintiff had or may have had against any of the Defendant or their agents, up to and including the date of the signing of the release; a denial of any guilt or liability; and a confidentiality provision." (ECF No. 106 at 2). Respondents further state that the proposed Settlement Agreement and Release did not ask the Plaintiff to waive claims for any criminal acts committed against him in the future. *Id*. Finally, Defendants argue that Plaintiff has presented no extrinsic evidence to invalidate the agreement of the parties. *Id*.

The Defendants' recitation of the settlement conference and resulting terms of the agreement comports with the settlement conference notes of the undersigned with one exception. The agreement reached on the day of the settlement conference was for release of all claims of the Plaintiff against the Defendants through the date of the settlement conference, rather than the date of the execution of the release documents. The Plaintiff agreed to settle all claims in this case for the sum of $1,650.00 plus the payment of $350.00 filing fee owed the Clerk of this Court. The Plaintiff was fully informed the settlement agreement would settle and resolve all claims he had made in this case up through the date of the settlement conference. He was fully informed of the

3

precise terms of the settlement agreement by the undersigned privately, and then again in a joint conference with Defendants counsel.

### III. DISCUSSION

A district court possesses the inherent power to enforce a settlement agreement in a case pending on the court's docket. *Barry v. Barry*, 172 F.3d 1011, 1013 (8th Cir. 1999). The settlement of cases and controversies is strongly favored by public policy since settlement of cases helps to relieve the court calendar of congestion and speeds the process of justice. *Southern Farm Bureau Life Insurance Company v. Burney*, 590 F. Supp. 106, 1020 (E.D. Ark. 1984). Settlement contracts, absent fraud or a genuine mutual mistake of fact, should be upheld. *Id.* "A settlement agreement is essentially a contract, subject to contractual rules of interpretation and enforcement." *Sheng v. Starkey Labs., Inc.,* 53 F.3d 192, 194 (8th Cir. 1995).

A settlement agreement does not need to be in writing to bind the parties. *See Western Thrift and Loan corp. v. Rucci,* 812 F.3d 722 (8th Cir. 2016) citing *Austin Farm Center, Inc. v. Austin Grain Co.,* 418 N.W.2d 181, 184 (Minn. App. 1988). To constitute a full and enforceable settlement, there must be such a definite offer and acceptance that it can be said there has been a "meeting of the minds" on the material terms of the agreement. *Id.* Only those terms upon which a settlement hinges are considered material terms. Leaving "insubstantial matters for later negotiation…does not vitiate the validity of the agreement reached." *Trnka v. Elanco Products Co.,* 709 F.2d 1223, 1226 n. 2 (8th Cir. 1983)

Plaintiff's arguments to set aside the settlement in this case are not persuasive. The Parties reached a settlement agreement. Plaintiff and Defense counsel agreed to the terms of an agreement before a magistrate judge at the court ordered settlement conference. "An open court stipulation as to a settlement agreement is a contract but made with more solemnity and with better protection

to the rights of the parties than ordinary contract made out of court." *Bath Junkie Branson, L.L.C. v. Bath Junkie Inc.,* 528 F.3d 556, 560 (8th Cir. 2008). If Plaintiff had any objection or reservations as to the terms of the agreement in this case, he should have clearly expressed it during the settlement conference laying out the terms of the agreement because courts are not "concerned with what the parties may have subjectively intended to say." *Id.* Even where one party "may now be unhappy with some or all of the terms…the fact that a party decides after the fact that a contract is not to its liking does not provide a reason to suppose that a contract was not in fact formed or to release that party from its obligation." *Visiting Nurse Ass'n, St. Louis v. VNAHealthcare, Inc.,* 347 F.3d 1052, 1055 (8th Cir. 2003).

The Court finds the parties objectively reached a meeting of the minds sufficient to create a valid, enforceable settlement agreement. As the undersigned conducted the settlement conference in this matter, no hearing is necessary.

### IV. CONCLUSION

For the reasons set forth above, I recommend Plaintiff's Motion to Withdraw Settlement Agreement. (ECF No. 101) be **DENIED**. Specifically, I recommend as follows:

1. Plaintiff be ordered to sign the necessary settlement documents by a date certain, with one amendment, namely, the release of all claims against the Defendants through the date of the settlement conference.

2. Upon Plaintiff's signing of the settlement agreement the Defendants be ordered to pay Plaintiff as agreed by the.

3. In the alternative, should Plaintiff continue to refuse to sign the settlement agreement, Defendants be ordered to pay the $1,650.00 settlement amount to Plaintiff through his inmate account with the Arkansas Department of Correction.

4. Defendants be ordered to pay the remainder of any filing fee owed the Court.

5. This case be dismissed upon Notice of Completion of the Settlement being filed with the Court by Defendants.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED this 21st day of December 2020.**

*/s/ Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE